Ranney, J.
This writ is prosecuted by Patrick Fortune, and *467 Elizabeth his wife, against Hartshell Center, and Sarah his wife, to reverse a judgment in ejectment, rendered by the Superior Court of Cincinnati, in a case in which they were all lessors of the plaintiff, and Lewis Williams was defendant. It appears, from the bill of exceptions taken upon the trial, that Mrs. Fortune, then Elizabeth Slaughter, and a sister named Julia Ann, were the nieces oí one John Ramsey, and derived the interest in the lot in Cincinnati, recovered from Williams, under his will. Julia Ann died in infancy, and shortly after, the will was proved and recorded, leaving Elizabeth her sole heir at law. About one year after her death, another “bister, Sarah, now Mrs. Center, was born. The father of these children subsequently died, and their mother, the sister of Ramsey, afterward married a second husband, and has issue throe other children, half-brothers of Elizabeth and Sarah; but who have not, in any way, been parties to any' of these proceedings. Upon this state of facts, the interesting and important questions are raised and discussed, whether Elizabeth took absolutely the interest of Julia Ann upon her death, or whether the descent then cast did not open upon the birth of Sarah, and invest her with one-half that interest; and, in that event, whether it was not still further modified upon the birth of the children of the half-blood, so as to let each of them in to an equal share with Elizabeth and Sarah. In the opinion of the Superior Court, Sarah took an equal interest with Elizabeth, and a recovery was accordingly had on the counts of the declaration, alleging a demise from Elizabeth and her husband, for three-fourths of the interest acquired under the will of Ramsey, and the remaining one-fourth upon the count alleging1 a demise from Sarah and her husband.
*We regret that the opinion is not in a condition to enable us to express an opinion upon these questions, and to settle the rights of the parties.
This, however, we can not do without disregarding the ordinary modes of proceeding, and passing upon the rights of parties not legitimately before us. When the legal aspect alone of the proceedings sought to be renewed, is regarded, it amounts to this: John Doe, then in full life, but since deceased (see 2 Con. Debates, 220, 321, and Code passim), sued Richard Roe, whose lawless character and violent conduct have become so notorious as to lead to his destruction (Ibidem), and alleged, as he might, in different counts, that he held the property by demises from Fortune and his wife, *468 and Center and his wife, and that he had been ejected from it by Richard Roe.
The latter, conscious he was in the wrong, informed Mr. Williams that he had no title, and advised him to appear and be made defendant in his stead. Williams did so, and the result was, John Doe got all he claimed, and Williams lost all he had, and both are satisfied.
But if the lessors of the plaintiff may be regarded as the real plaintiffs (as I admit they may for most purposes), still the case is not bettered. They joined in the same suit to recover a common interest, and succeeded. Among them they have got all they asked, and if one has got more than he ought, as against the other, very obvious remedies exist to right the wrong. But before this can be determined, they must leave Williams out of the controversy, and get upon opposite sides of the record. It is true, it is suggested for Williams, that the plaintiffs recovered more than they were entitled to. That would be a very good reason for reversing the judgment at the instance of one of the plaintiffs. If it is so, it will be in time to correct the error when Williams brings the writ.
The writ was irregularly issued, and must be dismissed.